UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| KURT LOWE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 3:20-cv-106-DJH |
| | ) |
| SWIFT PORK COMPANY, | ) |
| | ) |
| Defendant. | ) |

COMPLAINT AND DEMAND FOR JURY TRIAL

## I. Nature of the Case

1. Plaintiff, Kurt Lowe ("Lowe"), brings this Complaint against Defendant, Swift Pork Company ("Defendant"), for its discriminatory actions towards him based on his gender, male, and for retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* and the Kentucky Civil Rights Act ("KCRA"), for discrimination based on his disability and retaliation in violation of the American with Disabilities Act, as amended, 42 U.S.C. § 12101 *et. seq.* ("ADAAA") and the Kentucky Civil Rights Act ("KCRA") and for retaliating against him for having a worker's compensation claim in violation of Kentucky Law.

## II. Parties

2. Lowe is a United States citizen and has resided within the State of Indiana at all relevant times hereto.

3. Defendant is a Foreign For-Profit Corporation which has conducted business and is located within the Western District of Kentucky at all times relevant hereto.

### III. Jurisdiction and Venue

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343; 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5(f)(3).

5. Lowe's state law claims arise from the same common nucleus of operative facts as his federal law claims and all of his claims form a single case and controversy under Article III of the United States Constitution

6. Defendant is an "employer" as that term is defined by 42 U.S.C. §2000e(b), 42 U.S.C. § 12111(5)(A) and KRS 344.030(2).

7. Lowe, at all times relevant, has been an "employee" as that term is defined by 42 U.S.C. §2000e(f), 42 U.S.C. § 12111(4) and KRS 344.030(5).

8. Lowe has a "disability" as that term is defined by 42 U.S.C. § 12102(2) and KRS 344.010(4) and Lowe is a qualified individual with a disability as that term is defined by the ADAAA and KRS 344.040(1). At all relevant times, Defendant had knowledge of Lowe's disability, Lowe had a record of being disabled and/or Defendant regarded Lowe as being disabled.

9. Lowe satisfied his obligation to exhaust his administrative remedies having timely filed U.S. Equal Employment Opportunity Commission Charge – 474-2019-00385 alleging gender discrimination, disability discrimination and retaliation

against the Defendant. Lowe received his Notice of Suit Rights for his Charge of Discrimination and timely files this action.

10. A substantial part of the events, transactions, and occurrences relevant to this lawsuit arose within the geographical environs of the Western District of Kentucky; thus, venue is proper in this Court.

## IV. Factual Allegations

11. Lowe, who is male, began working for the Defendant on or about May 26, 2018 as a Production Line employee for first shift. In or around August 2018, Lowe transferred to second shift in B06. Lowe was employed in this capacity throughout the duration of his employment with Defendant.

12. Throughout his tenure, Lowe met or exceeded all of Defendant's legitimate performance expectations.

13. On or about June 20, 2018, Lowe submitted a completed form that was given to him by Human Resources employee, Juan Rojas ("Rojas") to ensure Lowe's absence on June 19, 2018 was an excused absence. Pursuant to Rojas' instruction and company policy, Lowe attached a court record in support of his absence. No points were assessed to Lowe.

14. On or about July 24, 2018, Lowe submitted a completed form that was given to him by Rojas to ensure Lowe's absence on July 24, 2018 was an excused absence. Pursuant to Rojas' instruction and the Defendant's policy, Lowe attached a court record in support of his absence. Although Rojas had repeatedly stated, including the day Lowe was terminated, that no points should have been assessed

from this occurrence, the female HR employees wrongfully applied two (2) points to his personnel file.

15. Throughout Lowe's employment with the Defendant, the Defendant's Human Resources department, which consists of three female employees and one male employee, the female employees routinely and inaccurately assessed attendance points to Lowe's personnel file.

16. While unrepresented by the UFCW Union because his probationary period was still in effect, Lowe discovered the wrongfully assessed points from July 24, 2018. During a brief conversation Lowe had with Jessica, one of the HR female representatives, she stated that Lowe "should not have listened to Mr. Rojas" (referring to his instruction on how reporting absences on June 20, 2018 and July 24, 2018). After Lowe's brief conversation, with Jessica, Lowe discovered additional evidence in support of his excused absences. As a result, Lowe attempted to schedule a meeting with Jessica, which he was unable to do for over a week because Jessica refused to speak to Lowe during his probationary period.

17. When finally represented by the Union, Lowe requested that the Chief Shop Steward, Darlene, who is also a female, schedule a meeting with Jessica about the wrongful assessment of two points from July 24, 2018. Immediately preceding the meeting with Jessica, Rojas told Lowe that Lowe followed Rojas' instruction correctly and that Lowe should not have been assessed the points. Lowe informed Rojas that Jessica stated, "you shouldn't have listened to Mr. Rojas", which upset Rojas. During Lowe's meeting with Jessica and Darlene, Jessica gave him an

Attendance Violation form, that not only wrongfully assessed the two points from July 24, 2018, but several additional points, totalling nine (9) wrongfully assessed points. These wrongfully assessed points were amended from nine (9) to seven (7), but the accurate number of points that should have been assessed at the time was three (3) points. Jessica said she would investigate Lowe's claims, specifically investigating whether Lowe was assessed any points from following Rojas' instructions. However, Jessica never investigated the claims.

18. During Lowe's termination meeting on October 26, 2018, Jessica admitted that she never spoke to Rojas. In fact, immediately preceding the terminating meeting in Jessica's office, Lowe went into Rojas' office and he stated that neither Jessica nor Darlene had spoken to him about Lowe's attendance points. Additionally, Rojas continued to state that Lowe should not have received points for July 24, 2018. At the conclusion of Lowe's conversation with Rojas, Rojas expressed his frustration and suggested Lowe make a complaint with Defendant's Ethics Department.

19. In or around August 2018, Lowe transferred to second shift. After transferring to second shift, Lowe began being harassed by Heidi, a female co-worker at Defendant. Lowe also observed serious food safety issues that put consumers at risk, he observed issues with the maintenance of equipment that seriously risked the safety of Defendant's employees and he observed employees planning and carrying out the sabotaging of production and inappropriate inaction by supervisor, William Mayfield ("Mayfield").

20. On or about September 6, 2018, Lowe expressed his concerns to Mayfield about the aforementioned issues. However, Mayfield never took action to remedy these issues.

21. On or about Friday, September 7, 2018, Heidi instructed her friend and co-worker to harass Lowe. This resulted in Heidi's friend physically assaulting Lowe while at work. Lowe immediately informed the female Chief Shop Steward, Darlene but no action was taken by Darlene or Mayfield. When Lowe requested to not work with Heidi, Defendant forced him to continue working with Heidi. As such, Heidi continued to verbally harass Lowe by cursing at him and threatening to get him kicked out of the department. Much of Heidi's harassment and threats was done in the presence of Mayfield.

22. As a result of a recent and serious injury that required on-going treatment, Lowe started feeling pain that required him to leave work early on September 7, 2018. Lowe scheduled the earliest doctor appointment available, which was on Tuesday, September 11, 2018. As a result of the pain, Lowe called off on Saturday, September 8, 2018 and Monday, September 10, 2018.

23. On or about September 10, 2018, on his own personal time, Lowe met with Defendant's Superintendent Nate Lewis ("Lewis") and discussed the aforementioned issues. Lewis told Lowe stated that he was aware of the problems and that Lowe reconfirmed what he already knew. Lewis also informed Lowe that he had already scheduled a meeting with Mayfield for later that day. During their meeting, Lewis praised Lowe's attention to detail; that he was looking for a

supervisor who paid attention to detail; and asked Lowe to submit an application for a supervisor position – which Lowe did on September 12, 2018.

24. On or about September 26, 2018, Lowe returned to work. Upon his return, Lewis stated he was happy about Lowe's return and asked if he'd applied for the supervisor position. Lowe confirmed he applied and Lewis stated he planned on speaking with the hiring manager, Rojas, about Lowe's promotion. In response to the allegations that Lowe was responsible for production issues, Lewis investigated the allegations and conducted an experiment. His investigation concluded with evidence in support of Lowe and that his co-workers were sabotaging production.

25. On or about September 26, 2018, Lowe complied with policy, by submitting a doctor's note to the company Occupational Nurse (female) for his on-the-job-injury and treatment of it. The Nurse asked what happened and Lowe informed her that the treatment was for injuries he received from the assault of Heidi's friend on September 7, 2018. The Nurse gave Lowe the appropriate medical form/documentation, which Lowe gave to his supervisor, Mayfield. Instead of receiving no points according to policy, Lowe was wrongfully assessed two and a half (2.5) points. Lowe was never informed he accrued points from this matter. He only found out that he accrued points from this instance during his wrongful termination grievance. Additionally, the female Occupational Nurse also told Lowe he could not apply for worker's compensation.

26. On or about October 1, 2018, Lowe met with Lewis to report Heidi's harassment; her sabotaging production; and Mayfield's failure to take appropriate

action. Immediately after arriving to his workstation, Lowe was paired to work with Heidi again, even after he reported the harassment and requested to work with someone else. Heidi continued harassing Lowe; she angrily stated - "I'll get a gun and get you out of here" and abruptly left the line and department. Concerned for his safety and the safety of others, Lowe reported the threat to Mayfield. As a result, Mayfield searched for Heidi, but never reported the threat to security or human resources. Mayfield found Heidi sitting with HR, falsely alleging Lowe made inappropriate comments to her. Mayfield returned and told Lowe to keep working. After two hours passed since the incident, Lowe was called into HR Stacey and Darlene and he was falsely accused of harassing Heidi.

27. As a result of getting so upset with this entire incident, Lowe began having chest pains and told Stacey and Darlene. Lowe left work early to seek medical attention for the chest pains. Lowe returned to work on October 4, 2018 and submitted a doctor's note to the Occupational Nurse. The Nurse gave Lowe the proper documentation, which he gave to supervisor Mayfield. Lowe was assessed one and a half (1.5) points for this absence when it should have been excused per policy.

28. On or about October 4, 2018, Lowe submitted an affidavit, to both Stacey and Darlene during a meeting with both of them, about the incidents. On or about October 5, 2018, Lowe submitted a Formal Complaint to both Darlene and Stacey. On or about October 8, 2018, Lowe submitted an additional Formal Complaint to both Darlene and Stacey.

29. In the weeks prior to October 22, 2018, Lowe was told by a male shop steward that Lowe was being blacklisted by Darlene and that he and other stewards were upset about Darlene's conduct. The male shop steward also told Lowe that Darlene, Jessica and Stacy have routinely discriminated against men.

30. On or about October 22, 2018, Lowe had an on-the-job-injury and sought treatment by his physician. On or about October 25, 2018, Lowe submitted his doctor's note to the Occupational Nurse and once again she attempted to falsify company records and inappropriately assessed points to Lowe. Jessica told the Nurse to not make Lowe a copy of the doctor's note for his own records, although they did each time prior. When Lowe took the note back and was about to leave to go make a copy, Jessica snatched it from his hands and said "you already turned it in, so it's our property now." Jessica went on to tell Lowe it was a HIPAA violation to provide Lowe a copy for his records.

31. On or about October 25, 2018, Stacey informed Lowe that HR had closed the investigation into the incident with Heidi, without interviewing a willing witness that would have offered evidence in support of Lowe.

32. On October 26, 2018, Defendant terminated Lowe's employment.

33. On December 7, 2018, Lowe attended his grievance hearing held at Defendant's plant. During the Grievance hearing, Stacey and Jessica stated they had no documentation from the Occupational Nurse about Lowe's on-the-job-injuries, which was untrue.

34. Additionally, Lowe's Union representative stated that seven (7) of Lowe's ten (10) attendance points were in violation of policy - e.g. Lowe was given five (5) attendance points for absences due to on the job injuries - and that Lowe should be reinstated with only three (3) attendance points. Defendant upheld Lowe's termination.

35. After the grievance hearing but before Defendant rendered their decision to not reinstate Lowe, the Union Director, Doug Padgett ("Padgett"), contacted HR Manager Stacey to inform her that Lowe did in fact have proper documentation from the Occupational Nurse of his on-the-job injuries. However, Stacey told Padgett and Lowe during the grievance meeting that Defendant had no documentation that Lowe reported the on the job injuries. Defendant upheld Lowe's termination.

## V. Causes of Action

### Count I - Gender Discrimination Claim

36. Lowe hereby incorporates by reference paragraphs one (1) through thirty-five (35) of his Complaint as if the same were set forth at length herein.

37. Lowe was harassed, subjected to a hostile work environment, discriminated against and terminated based on his gender.

38. Defendant's actions are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq.* and KCRA.

39. Defendant's actions were willful, intentional, and done with reckless disregard for Lowe's civil rights.

40. Lowe has suffered injury as a result of Defendant's unlawful actions.

### Count II - Retaliation Claim

41. Lowe hereby incorporates by reference paragraphs one (1) through forty (40) of his Complaint as if the same were set forth at length herein.

42. Lowe engaged in a protected activity when he complained of discrimination due to his gender and disability and was terminated as a result.

43. Defendant's actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq.*, the ADAAA and KCRA.

44. Defendant's actions were willful, intentional, and done with reckless disregard of Lowe's civil rights.

45. Lowe suffered damages as a result of the Defendant's unlawful actions.

### COUNT III - DISABILITY DISCRIMINATION

46. Lowe hereby incorporates paragraphs one (1) through forty-five (45) of his Complaint as if the same were set forth at length herein.

47. Defendant violated Lowe's rights by failing to engage in the interactive process, failing to provide a reasonable accommodation, harassing him and terminating his employment due to his disabilities and/or perceived disabilities.

48. Defendant's actions were intentional, willful and in reckless disregard of Lowe's rights as protected by the ADAAA and KCRA.

49. Robinson has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

## COUNT IV – RETALIATION FOR FILING WORKERS COMPENSATION

50. Lowe hereby incorporates paragraphs one (1) through forty-nine (49) of his Complaint as if the same were set forth at length herein.

51. Defendant retaliated against Lowe for his pursuit of Worker's Compensation Benefits by harassing him and later terminating his employment in violation of KRS 342.197.

52. Defendant's actions were intentional, malicious, and done with reckless disregard for Lowe's legally protected rights.

53. Lowe has suffered damages as a result of Defendants' actions.

## VI.     REQUESTED RELIEF

WHEREFORE, Plaintiff, Kurt Lowe, by counsel, respectfully requests that this Court find for Plaintiff and:

1. Permanently enjoin Defendant from engaging in any employment policy or practice that discriminates against any employee on the basis of his/her gender or disability;

2. Order that the Plaintiff be awarded any back pay he would have earned, including fringe benefits, with related monetary benefits and interest thereon, absent Defendant's unlawful acts;

3. Reinstate Plaintiff to his former position or aware front pay in lieu thereof;

4. Award the Plaintiff compensatory damages, consequential damages, emotional distress damages, lost wages and benefits, and medical expenses in an

amount sufficient to compensate Plaintiff for the damages caused by the Defendant's wrongful actions;

    5.    Award the Plaintiff punitive damages;

    6.    Award the Plaintiff his attorney fees, litigation expenses, and costs incurred as a result of this action;

    7.    Award the Plaintiff pre- and post-judgment interest on all sums recoverable; and

    8.    Grant such other relief as may be just and proper.

                        Respectfully submitted,

                        BIESECKER DUTKANYCH & MACER, LLC

                        By: /s/*Andrew Dutkanych*
                        Andrew Dutkanych III, Atty No. 91190
                        411 Main Street
                        Evansville, Indiana 47708
                        Telephone: (812) 424-1000
                        Facsimile: (812) 424-1005
                        Email:   ad@bdlegal.com

                        *Counsel for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff, Kurt Lowe, by counsel, requests a trial by jury on all issues deemed so triable.

      Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

By: /s/*Andrew Dutkanych*
Andrew Dutkanych III, Atty No. 91190
411 Main Street
Evansville, Indiana 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email:   ad@bdlegal.com

*Counsel for Plaintiff*